UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSIAH PROVAN,

Plaintiff,

-against-

CITY OF NEW YORK; URBAN PATHWAYS, INC.; GODDARD RIVERSIDE COMMUNITY CENTER; LARRY HARRIS; DARLENE REDDISH; GEORGE DONALDSON; DENZEL LNU; ISIDIRO RODRIGUEZ; LASHEA GALLOP; BERNADETTE REED; ASHTON DALEY; ANDREW PADILLA; MARDOCHE SIDOR, M.D.; ANNE STOCKTON; P.O. KELLY, BADGE 11496; NYPD SUPERVISOR, BADGE 7247248; JOHN DOES #1-5,

Defendants.

26-CV-7587 (KMW)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

KIMBA M. WOOD, United States District Judge:

Plaintiff Josiah Provan, proceeding *pro se*, brings this action under the court's federal question jurisdiction, alleging that Defendants subjected him to unsafe conditions in transitional housing locations, failed to accommodate his disability, and failed to protect him from harm. He asserts claims under 42 U.S.C. § 1983, Titles II and III of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the civil enforcement provision of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, and both statutory and common law claims under New York law.

Plaintiff names as defendants: (1) the City of New York, and eight of its employees, namely, New York City Police Department ("NYPD") Officer Kelly, Badge #11496; NYPD Supervisor, Badge #7247248; and five John Doe NYPD officers or staff; (2) Urban Pathways, Inc. and five of its employees, namely, Larry Harris, program director; Darlene Reddish; George Donaldson, case manager; Denzel (last name unknown), front desk; and Mardoche Sidor, M.D.;

and (3) Goddard Riverside Community Center, and six of its employees, namely, Isidro Rodriguez, director of social services; Lashea Gallop, case manager; Bernadette Reed, program director; Ashton Daley; Andrew Padilla; and Anne Stockton. Plaintiff seeks monetary relief.

By Order dated September 15, 2026, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. (ECF No. 5.) For the following reasons, the Court dismisses the complaint, with 30 days' leave to replead.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction over the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

Although the law mandates dismissal on any of these grounds, the Court is obligated to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and to interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citations omitted). But the "special solicitude" courts provide to *pro se* litigants, *id*. at 475 (citation omitted), has its limits –- to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially

plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true, but it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678-79. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following facts are drawn from the complaint.[1] Plaintiff has been street homeless since September 2023, and he "has documented severe ADHD (Combined Presentation) and Adjustment Disorder with depression and anxiety[.]" (ECF No. 1, at 2.) From about June 2024 to April 2025, he resided at Urban Pathways' 105th Street Safe Haven location in Manhattan, and from June 2025 to April 2026, he lived at Urban Pathways' Travelers Safe Haven on 40th Street in Manhattan. (*Id*. at 3.)

On an unspecified date, "Harris, an Urban Pathways program director, conditioned continued placement on case-management attendance and threatened transfer." (*Id*.) Plaintiff claims that his management meetings with Urban Pathways were often short and unproductive. (*Id*.) In December 2025, following a dispute concerning these meetings, Plaintiff requested his complete file maintained by the New York City Department of Homeless Services, but he never received it. (*Id*.) Plaintiff concludes that Urban Pathways used him as "'scam bait' to put his

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation appear as in the complaint unless noted otherwise.

name on papers to draw money." (*Id.*) Additionally, Plaintiff alleges that Harris awarded contracts to Urban Pathways donors, engaging in corruption and fraud involving public funds. (*Id.*)

On an unspecified date, Plaintiff requested from unspecified persons "accommodations including meals set aside because of threats, an off-site laundry voucher, and a bed near Mount Sinai." (*Id.* at 4.) Those requests were denied, and in response, Plaintiff conducted a nine-day hunger strike, which culminated in his collapse and hospitalization for hypoglycemia. (*Id.*) Additionally, a cook at an unspecified housing provider used racial and homophobic epithets towards him, but the cook's employer—who Plaintiff does not identify—took no remedial action. (*Id.*)

On later unspecified dates, staff called the NYPD to report that Plaintiff was suicidal, but the NYPD "cleared" him each time. (*Id.*) On another unspecified date, Urban Pathways, assisted by NYPD officers, locked Plaintiff out of Safe Haven. Plaintiff went to a nearby NYPD precinct stationhouse to file a complaint, but Officer Kelly and the NYPD Supervisor refused to take his report. (*Id.*)

Finally, in late 2025, Plaintiff experienced unsafe conditions at the 40th Street Safe Haven location. "Dust" filled his room when Urban Pathways failed to contain nearby renovations, causing Plaintiff to "develop[ ] respiratory symptoms requiring emergency care." (*Id.* at 5.)

## DISCUSSION

### A. Civil Rights Claims

Plaintiff asserts claims under 42 U.S.C. § 1983, alleging violations of his constitutional rights, against all Defendants other than Goddard Riverside Community Center and Urban Pathways.

**1. The NYPD Defendants**

Plaintiff's Section 1983 claims against the NYPD Defendants—that is, Officer Kelly, NYPD Supervisor, and Officers Does #1-5—appear to be premised on their alleged refusal to protect Plaintiff from harm by the transitional housing providers and the NYPD Defendants' refusal to take Plaintiff's report at the police stationhouse. That is, Plaintiff's claims against them are largely based on the the NYPD's failure to investigate or remediate allegedly dangerous conditions in the non-custodial transitional housing settings.

To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Here, Plaintiff alleges that the officers violated his due process rights by failing to protect him from harm by the transitional housing providers. There is, however, no federal constitutional duty requiring a government official to investigate or protect an individual from harm by private parties. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005); *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gong v. Sarnoff*, No. 23-CV-0343 (LJL), 2024 WL 3638335, at *7 (S.D.N.Y. Aug. 1, 2024) ("It is settled that the State has no general Due Process obligation to ensure the safety, care, and protection of individuals who are not in its custody. Also, [i]t is well established that [t]here is no constitutional right to an investigation by government officials." (internal quotation marks and citations omitted, alterations in original)); *see also Baltas v. Jones*, No. 21-CV-0469, 2021 WL 6125643, at *14 (D. Conn. Dec. 27, 2021) (The plaintiff "has no 'constitutional right to an investigation of any kind by government officials.'" (citation omitted)); *Buari v. City of New York*, 530 F. Supp. 3d 356, 389 (S.D.N.Y. 2021) ("[T]here is no constitutional right to an

adequate investigation[.] Accordingly, a failure to investigate is not independently cognizable as a stand-alone claim under Section 1983." (internal quotation marks and citation omitted)).

To the extent that Plaintiff's claims against the NYPD officers are premised on allegations that they are responsible for the allegedly substandard conditions in the transitional housing locations, those claims fail because Plaintiff is not in the custody of NYPD. As the Supreme Court has recognized, a constitutional duty may arise "when the State takes a person into its custody and holds him there against his will," *DeShaney*, 489 U.S. at 200, such as in the case of prisoners or involuntarily committed mental patients, *see Youngberg v. Romeo*, 457 U.S. 307, 319 (1982). In such cases, "the Constitution imposes on the State a corresponding duty to assume some responsibility for [the forcibly restrained individual's] safety and general well-being." *DeShaney*, 489 U.S. at 200; *see id.* ("[W]hen the State . . . so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the . . . Due Process Clause."). No such constitutional duty is created, however, for "homeless people who voluntarily choose to remain in shelters operated by government entities or contractors." *Oslzly v. Rosenblatt*, No. 14-CV-3638 (SLT) (LB), 2014 WL 4161347, at *7-8 (E.D.N.Y. Aug. 19, 2014); *see Brown v. City of New York*, No. 17-CV-5836 (LDH) (ST), 2018 WL 1770557, at *4 (E.D.N.Y. Apr. 12, 2018) (holding that the Constitution did not impose an affirmative duty of care where a plaintiff "is free to leave the shelter").

Plaintiff therefore fails to state a Section 1983 claim against any of the NYPD Defendants, and these claims are therefore dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**2. Defendant City of New York**

Plaintiff also asserts Section 1983 claims against the City of New York related to its alleged "custom of police assisted lockouts and precinct refusal to take unsheltered complainants' felony reports." (ECF No. 1, at 5.)

When a plaintiff sues a municipality under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under . . . section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a Section 1983 claim against a municipality or against municipal officials in their official capacities, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *See Jones v. Town of East Haven*, 691 F.3d 72, 80-81 (2d Cir. 2012); *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

A plaintiff may satisfy the policy or custom requirement by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of the those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

In the complaint, Plaintiff does not provide plausible, nonconclusory allegations suggesting that his constitutional rights were violated or that, if they were violated, such violations were caused by a municipal policy or custom. First, as to the NYPD Defendants, Plaintiff generally has no federal constitutional right to be protected from harm from private parties, such as the transitional housing providers and their staff members, and has no federal constitutional right to have police officers investigate his reports of harm or likelihood of imminent harm from private parties. Thus, because Plaintiff has failed to allege that the NYPD Defendants and other municipal actors violated his constitutional rights by refusing to take his report at the police stationhouse, he fails to state a Section 1983 claim against the City of New York on that basis. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

Second, Plaintiff alleges that "a custom of police-assisted lockouts" caused a violation of his constitutional rights. (ECF No. 1, at 5.) Even if those allegations implicated Plaintiff's constitutional rights, Plaintiff mentions only his own limited experiences and fails to allege facts suggesting that the alleged practice is "so consistent and widespread that, although not expressly authorized, [it] constitutes a custom or usage of which a supervising policy-maker must have been aware[.]" *Brandon v. City of New York*, 705 F. Supp. 2d at 276-77; *see City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell.*"); *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) ("[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.") (internal quotation marks and alteration omitted); *Guerrero v. City of N.Y.*, No. 12-CV-2916 (RWS), 2013 WL 673872, at *2 (S.D.N.Y. Feb. 25, 2013) ("[B]oilerplate claims do

not rise to the level of plausibility required to state a viable *Monell* claim.") (internal quotation marks omitted).

Moreover, the alleged involvement of the NYPD Supervisor in the lockouts does not change the analysis. While it is true that municipal liability may be imposed where a final policymaker of the municipality is personally responsible for the constitutional violation, *see McMillian v. Monroe County,* 520 U.S. 781, 784-86 (1997), a final policymaker is an official of a municipality who "speak[s] with final policymaking authority" for the municipality "in a particular area, or on a particular issue[,]" *id.* at 785. The question of who qualifies as a final policymaker is one of state law. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 123 (1988); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986). Here, however, Plaintiff provides no allegations about the scope of the NYPD Supervisor's authority, and therefore Plaintiff fails to allege that the NYPD Supervisor is a policymaker with regard to the alleged practice of assisting transitional housing providers during lockouts. *See e.g.*, *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000) (under New York law, the county sheriff is final policymaker with respect to conduct of staff members towards fellow officers); *Lytle v. Doyle*, 326 F.3d 463, 471-72 (4th Cir. 2003) (under prevailing state law, City Manager is final policymaker over police department). For all of these reasons, the Court therefore dismisses Plaintiff's Section 1983 claims against the City of New York, for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. Defendants Employed by Urban Pathways and Goddard

Plaintiff also asserts Section 1983 claims against the employees of both Urban Pathways, Inc. (Harris, Reddish, Donaldson, Denzel, and Sidor) and Goddard Riverside Community Center (Rodriguez, Gallop, Reed, Daley, Padilla, and Stockton).

A Section 1983 claim must allege facts showing that each defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Private parties are

therefore generally not liable under Section 1983. *Sykes v. Bank of America*, 723 F.3d 399, 406 (2d Cir. 2013) (per curiam) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties."). Neither the receipt of public funds nor the existence of a regulatory scheme governing the entity's or person's activities, without more, make a private entity's or person's conduct state action. *See Rendell-Baker v. Kohn,* 457 U.S. 830, 840-41 (1982); *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 152 (2d Cir. 2004) (noting that a "predominance of public funding" is not conclusive proof of state action).

The activity of a private person may be considered state action for the purpose of Section 1983 liability in the following situations: (1) when the person acts using the coercive power of the state or is controlled by the state (the "compulsion test"); (2) when the state provides significant encouragement to the person, the person willfully participates in joint activity with the state, or the person's functions are entwined with state policies (the "joint action" or "close nexus" test); or (3) when the state has delegated a public function to the person (the "public function test"). *See Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012).

The fundamental question under each test is whether the private person's challenged actions are "fairly attributable" to a state or local government. *Id.* (quoting *Rendell-Baker*, 457 U.S. at 838). To determine whether a private person functions as a state actor under Section 1983, a court must first "identify[ ] the specific conduct of which the plaintiff complains, rather than the general characteristics of the entity." *Id.* (internal quotation marks and citation omitted).

In the complaint, Plaintiff provides no plausible, non-conclusory allegations suggesting that the conduct of employees of Urban Pathways and Goddard Riverside Community Center was "fairly attributable" to a state or local government. *Fabrikant*, 691 F.3d at 207. His allegations do not allow the Court to determine that any employee was a "state actor" for purposes of Section 1983. The Court therefore dismisses, for failure to state a claim, all claims under Section 1983 against Harris, Reddish, Donaldson, Denzel, Sidor, Rodriguez, Gallop, Reed, Daley, Padilla, and Stockton. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**B. The Federal Disability Statutes**

Plaintiff also asserts claims under Title II of the ADA and the RA against the City of New York, and claims under Title III of the ADA and the RA against Urban Pathways and Goddard Riverside Community Center.

Title II of the ADA, which applies only to public entities, provides, in relevant part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009). Title III of the ADA, which applies to any person "who owns, leases (or leases to), or operates a place of public accommodation," prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation."[2]

[2] For the purposes of this Order, the Court assumes that Urban Pathways and Goddard Riverside Community Center are proper defendants under Title III of the ADA. *See* 42 U.S.C. § 12181(7)(K) ("[P]rivate entities are considered public accommodations . . . if the operations of such entities affect commerce," including "homeless shelter[s] . . . or other social service center establishment[s]."); 28 C.F.R. § 36.104 (including "homeless shelter" as a "place of lodging" covered by Title III).

42 U.S.C. § 12182(a). Finally, under the RA, "no otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794(a). The standards for claims under the ADA and the RA are substantially the same, *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016), although a claim under the RA must be supported by allegations that the benefit is part of a "program or activity receiving Federal financial assistance." *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998).

Plaintiff adequately alleges at this stage that he is a person with a disability under the federal disability statutes, but his allegations concerning disability discrimination are sparse, as he alleges only that he "requested accommodations including meals set aside because of threats, an off-site laundry voucher, and a bed near Mount Sinai." (ECF No. 1, at 4.) Plaintiff includes no facts from which the Court can infer that there is a connection between his ADHS, his Adjustment Disorder, and the accommodations that he requested. That is, Plaintiff does not allege facts showing how those accommodations are necessary for him to enjoy the services, programs, and benefits offered by the City of New York, Urban Pathways, or Goddard Riverside Community Center. *Cf. Magee v. Bos. Land Co. Mgmt. Servs.*, 90 F. App'x 560, 561 (2d Cir. 2004) (affirming dismissal of a disabled Fair Housing Act plaintiff's "requests for a key to the back door of his building and for a parking space in the lot behind the building" due to an absence of evidence that it was necessary for the plaintiff to use and enjoy the premises). There is no allegation in the complaint that Plaintiff's disabilities "made it difficult in any way for [him] to access benefits . . . that were available to all" persons receiving services provided by

those entities. *Tardif v. City of New York*, 991 F.3d 394, 405 (2d Cir. 2021). Plaintiff therefore fails to state a claim under the federal disability statutes. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**C. RICO**

Plaintiff also asserts claims against Urban Pathways and its employees under the civil provision of the RICO Act, which "creates a private right of action for individuals to enforce the RICO statute." *Mathon v. Feldstein*, 303 F. Supp. 2d 317, 322 (E.D.N.Y. 2004). The civil RICO enforcement provision states that "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] . . . may sue . . . in any appropriate United States district court and shall recover threefold the damages[.]" 18 U.S.C. § 1964(c); *see Med. Marijuana, Inc. v. Horn*, 604 U.S. 593, 601 (2025) ("A plaintiff has been 'injured in his business or property' if his business or property has been harmed or damaged."). In order to state a violation of Section 1962, and thus, a claim under the civil RICO enforcement provision, a plaintiff must allege facts showing: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (quoting 18 U.S.C. § 1962(a)-(c)). Such a person must also "allege that he was 'injured in his business or property *by reason of* a violation of section 1962.'" *Id.* (emphasis in original) (quoting 18 U.S.C. § 1964(c)).

To state a claim of a civil RICO conspiracy under Section 1962(d), a plaintiff must allege facts showing that the defendants "agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999). A plaintiff must also show that "if the agreed

upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Id.* at 244-45. Racketeering activity is defined to include a wide variety of criminal offenses, such as wire fraud, mail fraud, and money laundering. 18 U.S.C. § 1961(1).

The heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to RICO claims predicated on fraud. *See McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir. 1992); *Scalercio-Isenberg v. Goldman Sachs Mortg. Co.*, No. 21-CV-4124 (KPF), 2022 WL 3227875, at *9 (S.D.N.Y. Aug. 9, 2022) (holding that "even when a plaintiff proceeds *pro se*, courts apply the Rule 9(b) pleading standard and dismiss complaints that do not meet its heightened requirements"). A plaintiff must "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent[,] and plead those events which give rise to a strong inference that [each] defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Rev. v. Minci,* No. 21-CV-320 (AT) (JLC), 2022 WL 1910127, at *3 (S.D.N.Y. June 3, 2020) (quoting *Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016)) (cleaned up). "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).

Finally, conclusory allegations of injury to business or property "will not suffice; rather, a plaintiff must allege a 'concrete financial loss.'" *Jingle Kids USA, LLC v. In Colour Cap., Inc.*, No. 22-CV-7089 (JHR) (SLC), 2023 WL 5016496, at *9 (S.D.N.Y. June 6, 2023), *report and recommendation adopted*, 2023 WL 6389080 (S.D.N.Y. Oct. 2, 2023), *aff'd*, 771 F. App'x 62 (2d Cir. 2019) (summary order)); *see also Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 613 (S.D.N.Y. 2015) ("Courts have required that the plaintiff show

concrete financial loss in order to show injury under RICO.") (quoting *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014)) (cleaned up)).

Plaintiff does not allege facts that would support a civil RICO claim. As an initial matter, to the extent that Plaintiff's RICO claims are premised on fraud by Urban Pathways, Inc. and its employees, Plaintiff's conclusory allegations of fraud fail to comply with Rule 9(b). Plaintiff's RICO claim appears premised on his suspicions—not on well-pleaded allegations— that: (1) Urban Pathways, Inc. routed contracts to its donors as part of a "kickback" scheme, and that (2) its staff "used him as 'scam bait' to put his name on papers to draw money." (ECF No. 1, at 3.) Those conclusory allegations do not meet the heightened pleading standard that applies to claims of fraud by alleging specific facts demonstrating each Defendant's intent.

Moreover, while Plaintiff alleges an injury to his property—namely, "destroyed papers" (ECF No. 1, at 6)—he does not contend how that alleged destruction occurred, and more importantly, that the destruction constituted a "concrete financial loss[.]" *Westchester Cnty. Independence Party*, 137 F. Supp. 3d at 613. Plaintiff therefore fails to state a civil RICO claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**D. Supplemental Jurisdiction Declined**

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Having dismissed the federal claims over which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of

§ 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**E. Leave to Amend Granted**

Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state valid claims under Section 1983 or the federal disability statutes, the Court grants Plaintiff 30 days' leave to amend his complaint to detail his claims.

If Plaintiff does not file an amended complaint within the time allowed, or seek an extension of time to comply, the Court will direct the Clerk of Court to enter judgment in this action.

## CONCLUSION

Plaintiff's federal claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with 30 days' leave to replead. The Court declines to exercise supplemental jurisdiction over any state-law claims asserted in the complaint.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated: September 22, 2026
New York, New York

/s/ Kimba M. Wood
KIMBA M. WOOD
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

________________________________________

________________________________________

Write the full name of each plaintiff.

_____CV_______________

(Include case number if one has been assigned)

-against-

**AMENDED**

**COMPLAINT**

Do you want a jury trial?
☐ Yes ☐ No

________________________________________

________________________________________

________________________________________

________________________________________

Write the full name of each defendant. If you need more space, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section II.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐ **Federal Question**

☐ **Diversity of Citizenship**

### A. If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

____________________________________________________________________

____________________________________________________________________

____________________________________________________________________

____________________________________________________________________

### B. If you checked Diversity of Citizenship

#### 1. Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , ____________________________________, is a citizen of the State of
(Plaintiff's name)

_____________________________________________
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

______________________________________________.

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, ____________________________________, is a citizen of the State of
(Defendant's name)

________________________________________________

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

________________________________________________.

If the defendant is a corporation:

The defendant, ______________________________, is incorporated under the laws of

the State of ________________________________________

and has its principal place of business in the State of ______________________________

or is incorporated under the laws of (foreign state) ________________________________

and has its principal place of business in ______________________________________.

If more than one defendant is named in the complaint, attach additional pages providing information for each additional defendant.

## II. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

__________________________________________________________________________

First Name Middle Initial Last Name

__________________________________________________________________________

Street Address

__________________________________________________________________________

County, City State Zip Code

____________________________ ________________________________________

Telephone Number Email Address (if available)

## B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1:

First Name Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City State Zip Code

Defendant 2:

First Name Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City State Zip Code

Defendant 3:

First Name Last Name

Current Job Title (or other identifying information)

Current Work Address (or other address where defendant may be served)

County, City State Zip Code

Defendant 4: ______________________________________________

First Name Last Name

______________________________________________

Current Job Title (or other identifying information)

______________________________________________

Current Work Address (or other address where defendant may be served)

______________________________________________

County, City State Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: ______________________________________________

Date(s) of occurrence: ______________________________________________

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## IV. RELIEF

State briefly what money damages or other relief you want the court to order.

## V. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated Plaintiff's Signature

First Name Middle Initial Last Name

Street Address

County, City State Zip Code

Telephone Number Email Address (if available)

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.